**Monday, October 14, 2024**

Daniel H. Rader IV
Moore, Rader & York P.C.
Cookeville, Tennessee
danny@moorerader.com

**Re:** BoeselagerA 4261f074r | December 30, 2023 fire in Lookout Mountain, Tennessee

Dear Danny:

We received entreaties about settlement several months ago, but nothing since. We've been unable to discuss resolving this claim until our damages became clear. They are now. This is a demand to settle within your client's $1 million liability insurance limits. A judgment here could exceed those limits considerably, so we trust Auto-Owners will give this demand the attention it deserves.

As you know, State Farm Fire and Casualty Company has retained us to protect its subrogation interest arising out of the fire that damaged the home of Adam and Lyndsey Boeselager. The home is at 125 Fort Stephenson Place in Lookout Mountain, Tennessee. The fire occurred on December 30, 2023. No doubt exists that the fire started at a first-floor fireplace and spread into its chase. This was taken just after the fire department extinguished the fire.



The fire was limited. But smoke from the fire, and water and demolition from the fire department's suppression efforts, did extensive damage.

Daniel H. Rader IV
Moore, Rader & York P.C.
October 14, 2024 | Page 2

After proper notice to RoMar, the parties, their investigators, and RoMar's counsel convened to inspect the fire scene remains and damage in January 2024. We don't know the findings and opinions of RoMar's investigators. Still, we suspect they are similar to ours—that the fire was caused by superheating combustibles placed too close to the firebox.





These show the fireplace as RoMar had it under construction in late February 2023:




Together, these show that what ignited was what RoMar constructed. The Boeselagers had retained RoMar through an oral contract to improve their home, beginning in late 2022. The fireplace work that caused the fire was part of those improvements.

State Farm has covered the fire damage through its property insurance policy with the Boeselagers. Through its payments owed under that policy, State Farm acquired the rights to bring claims against those responsible for the fire under Tennessee law.[1] In that regard, we have brought two claims: negligence and breach of contract. In undertaking the design, construction, and renovation of the fireplace, RoMar assumed the obligation to perform that work with reasonable care, to avoid damaging the property of others, and in a manner commensurate with its standing as a professional contractor.[2] And service contracts, like RoMar's here, carry with them an implied obligation to complete the contract work skillfully, carefully, diligently, and in a workmanlike manner.[3] RoMar breached all of these duties in ways that caused the fire.

We reject the comparative fault RoMar has raised. First, that defense is not one to our contract claim: "Actions in contract do not allow an affirmative defense of comparative fault."[4] Second, what RoMar has alleged—at most—caused the fire to occur sooner rather than later. In other words, it was not a *proximate* cause of this inevitable fire. And third, Mr. Boeselagers's alleged fault will not bar the claims we bring with Mrs. Boeselagers's rights, which are all of the claims we bring.

As of today, we have paid $484,472.64 to repair the home; $491,806.43 in cleaning (most of it), repairing and replacing personal property; and $105,280.26 for provisional housing. We believe

---

[1] "Subrogation allows the insurer to 'stand in the shoes' of the insured and assert the rights of the insured against a third party." *York v. Sevier Cnty. Ambulance Auth.*, 8 S.W.3d 616, 618–19 (Tenn. 1999).

[2] See Restatement (Second) of Torts §§ 323, 324. Also, "The services of experts are sought because of their special skill. They have a duty to exercise the ordinary skill and competence of members of their profession, and a failure to discharge that duty will subject them to liability for negligence." *Benson v. Tenn. Valley Elec. Coop.,* 868 S.W.2d 630, 638 (Tenn. Ct. App. 1993).

[3] See *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 292 (Tenn. 2011).

[4] *Gerber Plumbing Fixtures, LLC v. Amerifreight, Inc.*, No. 2:15-cv-04146-ODW (RAO), 2016 U.S. Dist. LEXIS 95873, at *11 (C.D. Cal. July 18, 2016). *See also Haysville U.S.D. No. 261 v. GAF Corp.*, 666 P.2d 192, 199 (Kan. 1983) ("The use of the comparative negligence theory is not proper in breach of contract actions."); *Lee v. Andrews,* 667 P.2d 919, 921 (Mont. 1983) (finding use of "comparative negligence principles" in a contract case to be erroneous). *Bd. of Educ. of the Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 17 N.E.2d 1360, 1364 (1987) (stating that permitting apportionment of liability in actions arising from breach of contract would "do violence" to settled principles of contract law); *Sassen v. Tanglegrove Townhouse Condo. Ass'n*, 877 S.W.2d 489, 493 (Tex. App.–Texarkana 1994, writ denied) ("[R]eduction in damages under comparative negligence is applicable to negligence actions only and not to recoveries for breach of contract."); *Richter v. City of Des Moines*, No. C10-461MJP, 2012 U.S. Dist. LEXIS 46494, at *5 (W.D. Wash. Apr. 2, 2012)("Plaintiffs correctly contend that comparative fault or comparative negligence are affirmative defense to claims of negligence and not breach of contract.")

we have about $100,000 more to pay. We expect to complete the adjustment within the month. ~~In light of the adversarial relationship~~ that generally exists between an insurer and a claimant-insured, an inference may properly be drawn that the amount of damage to which the insurer concedes is, at the very least, the lower boundary of the damage actually suffered."[5] We trust you will find these sums and our supports in order. (We'll have our last bit of those to you within the month.)

We are entitled to prejudgment interest. We reserved this loss in early 2024 dollars, and fairness demands that we be paid back in those same dollars. To do otherwise would be to reward the party that caused this loss with an interest-free loan. "[F]airness will, in almost all cases, require that a successful plaintiff be fully compensated by the defendant for all losses caused by the defendant, including the loss of use of money the plaintiff should have received."[6] Though courts have traditionally awarded interest when the amount of the obligation is certain and the existence of the obligation is not disputed on reasonable grounds, "[t]he uncertainty of either the existence or the amount of an obligation does not mandate denial of prejudgment interest."[7] Tennessee Code section 47-14-123 allows interest at up to ten percent per year.

Tennessee also allows a party to recover expert expense.[8] Our investigative expenses total $18,126.91.

With prejudgment interest and recoverable claim expenses, a judgment here could exceed $1.3 million. To resolve the matter directly, State Farm demands $995,000 now. In exchange for that sum, State Farm will issue a complete release of its claims arising out of or related to the fire, reimburse the Boeselagers their deductible, and take whatever other steps are necessary (we can think of none) to cap RoMar's exposure within its insurance limits.

This offer is good for 60 days, but we would appreciate hearing from you sooner.

Sincerely,

QUIST, FITZPATRICK & JARRARD PLLC

By: Michael A. Durr

---

[5] *Lakewood Eng'g and Mfg. Co. v. Quinn*, 604 A.2d 535, 539-40 (Md. App. 1992).

[6] *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 83 (Tenn. Ct. App. 2000) (reversing trial court's denial of prejudgment interest).

[7] *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 928 (Tenn. 1998).

[8] See *Chastain v. Tenn. Water Quality Control Bd.*, 555 SW.2d 113, 115 (Tenn. 1977) ("Costs of investigation amounting to $576.62 were added making a total assessment of damages in the sum of $2,676.13.").